# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **VERILINK CORPORATION,** | ) | |
| a Delaware Corporation, and Affiliates, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **DARRYL S. LADDIN,** | ) | |
| as the Trustee for the Liquidating Trust | ) | |
| of the Estate of Verilink Corporation | ) | |
| and Larscom, Inc., | ) | |
| | ) | **CV 09-PT-957-NE** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **POWELL GOLDSTEIN, LLP,** | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION

This is an appeal, brought pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8001, from an order of the United States Bankruptcy Court for the Northern District of Alabama (Case No. 08-AP-80072, Chapter 11).

### Statement of Facts and Procedural History

Verilink Corporation ("Verilink") and Larscom, Inc. ("Larscom") filed separate petitions for reorganization under Chapter 11 of the Bankruptcy Code on April 9, 2006. Verilink and Larscom sought joint administration of their petitions which the Bankruptcy Court granted. Verilink filed a second Amended Joint Plan of Reorganization (the "Plan") on December 7,

2006. On January 31, 2007, the bankruptcy court confirmed the Plan, which became effective on February 13, 2007. Under the Plan, Appellant Laddin was named Trustee of the Liquidating Trust.

On April 8, 2008, Appellant brought an adversary action against former directors and officers of Verilink for breach of fiduciary duty and other claims. The Appellant and the defendants agreed jointly to extend the date for responsive pleadings until 30 days after an amended complaint was filed. The deadline for filing the amended complaint was extended by the bankruptcy court until September 29, 2008. Responsive pleadings were due to be filed 45 days after that. Discovery was not to commence until November 15, 2008.

After filing the complaint, Appellant sought documents from Powell Goldstein, LLP, which was not originally a defendant, regarding the claims against Verilink's officers and directors. Powell Goldstein served as counsel to Verilink during its acquisition of Larscom, Inc. (the "Larscom Transaction"), which closed on July 28, 2004, and it possessed Verilink corporate documents, including board minutes. In addition to representing Verilink in the Larscom transaction, Powell Goldstein also has served as Verilink's counsel during its bankruptcy proceedings.

Appellant filed his Amended Complaint on September 29, 2008 and sought leave to correct this amended complaint, which was granted on October 30, 2008. This Corrected Amended Complaint added Powell Goldstein as a defendant for pre-petition claims based on its alleged breaches of fiduciary duties, malpractice, civil conspiracy, and aiding and abetting breaches of fiduciary duties. These claims were based on Powell Goldstein's representation of Verilink during the Larscom Transaction.

On December 17, 2008, Powell Goldstein moved to dismiss the Corrected Amended Complaint on the grounds that the claims asserted against it were time barred by the statute of limitations and of repose under Alabama law. Appellant responded on January 30, 2009 by arguing that Powell Goldstein's fraudulent concealment of its role in the Larscom Transaction tolled the limitations/repose period. Appellant also attached two affidavits to his response which stated that Powell Goldstein was fraudulently obstructionist and dilatory in providing the Appellant with Verilink's corporate documents because the documents Appellant sought inculpated Powell Goldstein in the directors' and officers' allegedly tortious conduct. Appellant also communicated his intent to file for leave to further amend the complaint, which he did on February 12, 2009. This attempted amendment sought to allege facts as to Powell Goldstein's alleged fraudulent concealment of its alleged malfeasance, and it also sought to bring additional claims against Powell Goldstein for conflicts of interest, professional malpractice, and fraudulent concealment arising from Powell Goldstein's conduct during its representation of Verilink in the bankruptcy proceedings.

The bankruptcy court heard argument on March 24, 2009 on both Powell Goldstein's Motion to Dismiss and Appellant's Motion for Leave to Amend. The court granted the Motion to Dismiss, denied the Motion for Leave to Amend, and entered a written order to these effects on April 9, 2009. This order is the subject of the instant appeal which was timely filed and is now properly before this Court.[1]

---

[1] It is undisputed that the order was totally prepared by the attorneys for Powell Goldstein and was signed by the court without prior review by the Appellant. It was submitted to the bankruptcy court on April 9, 2009 and signed on that date. The bankruptcy court and the Appellee were notified on March 24, 2009 that the Appellant's attorneys would be in Birmingham on April 9, 2009.

**Contentions of the Parties**

Appellant contends the following:

That the bankruptcy court improperly denied Appellant's Motion for Leave to Amend and improperly granted its Motion to Dismiss based on:

1. Bad faith/delay and futility.

2. *Res judicata*.

3. A decision that Alabama law, and not Delaware law, controls.

4. That the Alabama Legal Service Liability Act's ("ALSLA") statute of limitations and repose is procedural.

5. That the ALSA time-bars Appellant's claims against Powell Goldstein.

6. That Appellant's claims against Powell Goldstein are time-barred by 11 U.S.C. § 108.

Appellee contends that, in addition to the reasons set out in the bankruptcy court's order, Appellant's claims against Appellee in the Amended Complaint were properly dismissed for the alternative reason that the doctrine of *in pari delicto* negates the proximate cause of the allegations.[2] Appellee further contends the ALSLA applies to the Appellee and the ALSLA provides the applicable statute of limitations and repose.

**Standard of Review**

On appeal from a bankruptcy court's decision in an adversary proceeding, the district court reviews a denial of a motion to amend a pleading pursuant to Fed. R. Civ. P. 15(a) (corresponding to Fed. R. Bank. P. 7015) for undue delay and bad faith under an abuse of discretion standard. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). A bankruptcy

---

[2] The court sees no merit to this position, but will leave the first examination to the bankruptcy court.

court abuses its discretion when it applies the incorrect legal standard, fails to follow proper procedure, or makes factual findings that are clearly erroneous. *In re Citation Corp.* 493 F.3d 1313, 1317 (11th Cir. 2007). When reviewing a denial of motion to amend for futility, the review is *de novo*. *See Freeman v. First Union Nat'l*, 329 F.3d 1231, 1234 (11th Cir. 2003). The district court reviews a grant of a motion to dismiss *de novo*. *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1038 (11th Cir. 2008).

The court will first address the Motion for Leave to Amend and then address the Motion to Dismiss.

## Motion for Leave to Amend

### Bad Faith/Undue Delay

The bankruptcy court found that Appellant's proposed Motion to Amend was tainted by undue delay and bad faith. The bankruptcy court concluded that Appellant knew of the claims against Powell Goldstein that allegedly arose from the bankruptcy proceedings (the "post-petition" claims) on July 21, 2008, two months before he filed the Amended Complaint that added Powell Goldstein (and six months after the deadline for filing the Amended Complaint). The court stated that since Appellant became aware of Powell Goldstein's alleged complicity in the Larscom Transaction malfeasance on July 21, 2008 (because that is that date Powell Goldstein turned over inculpating documents), Appellant was "aware of the facts that underlie his newly asserted claims against Powell Goldstein." (Order, Doc. 1, Exhibit 1, p.20.)  The apparent reasoning the bankruptcy court applies here is that once Appellant had reason to believe Powell Goldstein was liable for its conduct in the Larscom transaction, it necessarily follows that the post-petition claims relating to its ongoing tortious conduct in the Verilink bankruptcy

representation must have been evident to Appellant. While the bankruptcy court reaches no conclusion as to why appellant would omit these claims initially, the court did find that the "proposed amendment is simply a back door attempt to keep Powell Goldstein in the case . . . . once it learned the original claims were time-barred." *Id.* Appellant contends in his brief that it did not learn of the pattern of concealment and misconduct by Powell Goldstein during the bankruptcy proceedings until Powell Goldstein raised the *res judicata* and statute of limitation and repose defenses in its motion to dismiss.

  A court's discretion to dismiss a complaint without leave to amend "is 'severely restrict[ed]'"; leave to amend "shall be freely given when justice so requires." *See Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir.1988) (citation omitted). A court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

  The Eleventh Circuit in *Bryant* has held that Fed. R. Civ. P. 15(a) allows amendment either by "leave of court" or as a "matter of course." 252 F.3d at 1163. When a plaintiff has amended a complaint once as a "matter of course," it cannot be said that he has been given opportunity to amend by leave of court or that he has repeatedly failed to cure deficiencies through previously allowed amendments. *Id.* As in *Bryant*, the record reflects that Appellant has amended the Complaint once as a matter of course, and, therefore, the Motion to Amend was the first attempt to seek the court's permission to amend the complaint and cure its deficiencies.

  As to the undue delay argument, it should be noted that the Motion to Amend was filed

only approximately four months after Powell Goldstein had been added as a defendant in the Larscom Transaction suit. The motion was filed in response to the first motion or pleading filed by Powell Goldstein in the action, and discovery in the action had not yet begun. Most importantly, Appellant's Motion to Amend came in response to the affirmative defenses raised by Powell Goldstein in its Motion to Dismiss which was filed on December 17, 2008. Appellant's Motion for Leave to Amend was filed only two months after this, and its filing was suggested in Appellant's response of January 30, 2009. Given these facts, it cannot be said that Appellant's Motion to Amend came after undue delay. A consideration of the bankruptcy court's cited authority does not belie this. *See Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008) (no abuse of discretion where plaintiff's attempted to amend complaint in response to summary judgment seven weeks after the close of discovery); *Burger King v. Weaver*, 169 F.3d 1310 (11th Cir. 1999) (no abuse of discretion where defendant waited forty months to amend counter-claim on the eve of trial); *Campbell v. Emory Clinic*, 166 F.3d 1157 (11th Cir. 1999) (no abuse of discretion where leave to amend was in response to summary judgment and discovery had been closed for a year).  Even *Reliford v. City of Tampa*, 190 Fed. Appx 928 (11th Cir. 2006) is of dubious utility given that it is an unpublished opinion of no precedential value and does not discuss the reasoning behind affirming the denial of leave to amend. To the extent that the bankruptcy court found undue delay because the leave to amend was filed, at most, six months from the earliest possible imputation of possible knowledge of appellant's claims, mere length of litigation, without evidence of prejudice or bad faith, does not justify denial of leave to amend. *Bryant*, 252 F.3d at 1164 (11th Cir. 2001). Accordingly, this Court concludes that  the bankruptcy court abused its discretion in denying leave to amend based on undue delay.

As to bad faith, the bankruptcy court stated "[w]ith all due respect to the Plaintiff and his counsel, this Court believes that the proposed amendment is simply a back-door attempt to keep Powell Goldstein in this case so that Plaintiff can recover more money for the estate through settlement. If the factual allegations and claimed added to the proposed Second Amended Complaint were of such deep concern to Plaintiff when he discovered them, then he should have included them in the Amended Complaint, instead of waiting to file them only after he learned that his claims against Powell Goldstein were time-barred." (Order, Doc. 1, Exhibit 1, p.21.)[3] As far as Appellant's amendment being sought in bad faith so as to keep Powell Goldstein "in the case," it is surely not the rule that amendments are illicit if they seek to alter the theory of a case when facts or circumstances warrant. *See, e.g.*, *Foman v. Davis*, 371 U.S. 178 (1962) (finding abuse of discretion in district court's denial of leave to amend complaint to alter theory of liability to quantum meruit once district court ruled that plaintiff could not recover on oral contract due to statute of frauds). Furthermore, Appellant has argued, and supported via affidavits, that the reason the post-petition claims were not originally included in the Amended Complaint was that he did not become aware of these claims until a review of billing records during the bankruptcy proceedings yielded the prospective post-petition claims. *See* Appellant's Reply Brief, p. 12, n.1. (Doc. 12.)

Because the bankruptcy court found bad faith in Appellant's proposed amendment on the theory that such an amendment is a "back door" to maintain the suit against Powell Goldstein, such reasoning is an abuse of discretion as it, without more, contradicts established law, which clearly allows amendment of a complaint to alter or modify the theory of a case. Furthermore,

---

[3] It should be remembered that the Appellee wrote the order.

the record reflects ample reason why Appellant's amendment was sought in good faith and nothing in the bankruptcy court's order, or in Appellee's brief, demonstrates bad faith on the part of Appellant in seeking to amend the complaint.

Futility and Statute of Limitation
and
Repose Issues

The bankruptcy court also denied leave to amend on the grounds that an amendment would be futile because: (1) the post-petition claims are not new claims, but are instead "bootstrapped" to the Larscom Transaction, and therefore time-barred under the statute of limitations /repose in the ALSLA; and (2) even if amendment were allowed, these claims would be barred by *res judicata*.

All actions against "legal service providers" are covered under the ALSLA. *Bryant v. Robledo*, 938 So.2d 413, 418 (Ala. Civ. Ct. App. 206). This includes actions based on fraud. *Voyager Guaranty Ins. Co. v. Brown*, 631 So.2d 848, 850 (Ala. 1993) (citing *Leighton Avenue Office Plaza, Ltd. v. Campbell,* 584 So.2d 1340 (Ala. 1991)). Thus, to the extent that an independent cause of action against a covered attorney or firm claims is based on fraudulent concealment, such an action would be subject the repose limit set out in Ala. Code Section 6-5-574.

The Alabama Supreme Court has affirmed the absolute bar in *Denbo v. DeBray*, 968 So.2d 983, 990 (Ala. 2006), where it stated:

> Finally, the second provision of § 6-5-574(a) states that "in no event may the action be commenced more than four years after such act or omission or failure." That absolute four-year bar is reiterated in subsection (b). Although the plaintiffs undertook to challenge the constitutionality of the four-year absolute "cutoff" in

> their motion to alter, amend, or vacate the summary judgment, the trial court properly noted in its amendment to that order that the constitutional attack was untimely, and it consequently rejected their challenge. No constitutional challenge to the enforcement of the four-year bar is asserted on appeal, and that absolute bar, independent of all else, serves to preclude plaintiffs' legal-malpractice action when the "occurrence" approach is employed.

*See also Kachler v. Taylor*, 849 F.Supp. 1503, 1513 (M.D. Ala. 1994) (concluding that the tolling provisions of Ala. Code Section 6-2-3 do not obviate the ultimate four year statute of repose in the ALSLA). If the ALSLA is applicable to Powell Goldstein, this court agrees that the pre-petition claims are barred.[4] There is, however, the further issue of whether the ALSLA does apply to Powell Goldstein and, if so, what the statute of limitations would be.

As to the first line of reasoning, this court finds that the bankruptcy court erred as a matter of law in determining that the proposed post-petition claims are time-barred. Appellant's alleged claims, while tangentially related to the Larscom Transaction, arise separately and independently of that event. Appellant alleges that Powell Goldstein – through its representation of Verilink *during the bankruptcy proceedings* – had an ongoing conflict of interest, and was guilty of malpractice and fraudulent concealment as to its role in the Larscom Transaction. If the Alabama Legal Services Liability Act controls any post-petition claims brought against Powell Goldstein. Ala. Code. § 6-5-573 ("There shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein."), the ALSLA provides a two-year statute of limitations, a six month savings provision (as well as the two year savings provision provided in Ala. Code § 6-2-3 for fraudulent concealment), and an absolute statute of repose of

---

[4] This court agrees that Delaware law does not apply.

four years. Ala. Code § 6-5-574. Causes of action against legal service providers accrue from the date of the occurrence of the tortious act or omission. *Ex parte Panell*, 756 So. 2d 862, 868 (Ala. 1999). Appellant's proposed Second Amended Complaint seeks to add claims against Powell Goldstein for its conduct during the bankruptcy proceedings which began April 9, 2006. Assuming *arguendo* this is when the post-petition claims accrued, the two-year statute of limitations period would have run on April 9, 2008. However, the two-year savings provision of Ala. Code § 6-2-3 would apply here (at least for purpose of futility) because of the allegations that Powell Goldstein fraudulently concealed its alleged malfeasance. *Rutledge v. Freeman*, 914 So. 2d 364, 370-71 (Ala. Ct. Civ. App. 2004) (applying § 6-2-3 to the ALSLA and reversing grant of summary judgment on statute-of-limitations grounds). While it is true that the ALSLA creates an absolute bar to any action commenced after four years of accrual, that date would be April 9, 2010, at the earliest, and therefore is inapplicable here. Thus, as a matter of law, the claims in Appellant's proposed Second Amended Complaint, to the extent they are post-petition claims against Powell Goldstein that arise from conduct during the bankruptcy proceedings, are not time barred by the ALSLA.

**Motion to Dismiss**

There is an issue as to whether the ALSLA applies to the Appellee. A follow up issue would be, if the ALSLA does not so apply, what limitation of action would apply.[5] This question was addressed by the Supreme Court of Alabama in *Fogarty v. Parker Poe, etc.*, 961 So.2d 785 (Ala. 2006). There the court stated:

> The ALSLA defines a legal-service provider as:

---

[5] This issue has not been discussed by the bankruptcy court.

> "Anyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama. The term legal service provider includes professional corporations, associations, and partnerships and the members of such professional corporations, associations, and partnerships and the persons, firms, or corporations either employed by or performing work or services for the benefit of such professional corporations, associations, and partnerships including, without limitation, law clerks, legal assistants, legal secretaries, investigators, paralegals, and couriers."

§ 6-5-572(2), Ala.Code 1975.

*Id*. at 789.

Further that,

> Furthermore, it appears that the ALSLA applies only to attorneys who are licensed to practice law in Alabama. Parker Poe argues that it was "engaged in the practice of law in the State of Alabama" and, thus, falls under the second prong of the ALSLA's definition of a legal-service provider. However, this Court has expressly stated that "[t]he plain language of § 6-5-572(2), as well as that of the other portions of the ALSLA, clearly indicates that the Legislature intended for the ALSLA to apply only to lawyers *and to entities* that are composed of members who are licensed to practice law within the State of Alabama." *Alabama Educ. Ass'n v. Nelson*, 770 So.2d 1057, 1059 (Ala.2000) (Emphasis added).

*Id*. at 789. The decision is somewhat ambiguous as to whether a firm, such as Powell Goldstein, as opposed to one or more of its members, has to be licensed in Alabama in order for the ALSLA to apply to it.

In *Alabama Educ. Ass'n v. Nelson*, 770 So.2d 1057, 1058-1059 (Ala. 2000), the court stated:

> "In order to ascertain the meaning of a statute, we look first to the plain meaning of the words written by the Legislature. ....The plain meaning of the words used in § 6-5-572(2) indicates that the Legislature contemplated that the term 'legal service provider' would

> include a *professional corporation, association, or partnership itself*; the members of a professional corporation, association, or partnership who are licensed to practice law within the State of Alabama; ... ."
> (Emphasis added).

This may suggest that an entity such as Powell Goldstein must itself be licensed to practice in Alabama. The issue needs to be first addressed by the bankruptcy court. The parties and the bankruptcy court may wish to ask the following questions to the Alabama Bar Association. "Is a professional corporation, partnership or association considered to be licensed to practice law and a 'legal service provider' in Alabama if one or more of its members is licensed to practice law in Alabama? Under what circumstances can an out of state law firm be considered a 'legal service provider' subject to the ALSAL?" The bankruptcy court may wish to submit other questions. It may be beneficial to seek evidence from the Alabama Bar Assn; legislative history, etc. The answer may affect both the Motion to Amend and the Motion to Dismiss.

    This court does not, in any way, suggest the merits of any claims in the proposed amendment. Further, this court, while it doubts the validity of a *res judicata* argument, does not reach that issue because it was not developed by the bankruptcy court as distinguished from the Appellee. The court will reverse the ruling denying leave to further amend and remand the case for consideration of whether the ALSLA applies and, if not, what the effect will be on limitation issues.[6]

---

[6] The bankruptcy court is free, of course, to consider the case of Stanley v. Princhard, ___ F.3d ___, (5th Cir. August 17, 2009).

This the 21st day of August, 2009.

_____
　　　　　**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**